## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| **MATTHEW DUPLISEA** | ) | |
| | ) | **Civil Action No.  2:22** |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **PLAINTIFF'S COMPLAINT FOR** |
| | ) | **DEFAMATION AND CONSTITUTIONAL** |
| | ) | **VIOLATIONS** |
| **CITY OF BIDDEFORD, ALISHA** | ) | |
| **KEEZER AND BRIAN DUNPHE** | ) | |
| | ) | |
| **Defendant** | ) | |

NOW COMES, Plaintiff Matthew Duplisea ("Duplisea" or "Plaintiff"), by and his

attorney, the Law Office of Guy D. Loranger, to complaint against Defendants City of Biddeford

("Biddeford"), Alisha Keezer ("Keezer") and Brin Dunphe ("Dunphe") as follows:

## PARTIES AND JURISDICTION

1.    Plaintiff Duplisea is a resident of York County

2.    Defendant City of Biddeford is a township located in York County, State of Maine.

3.    Defendant Keezer is a resident of York County.

4.    Defendant Dunphe is a resident of York County.

5.    All actions of which Plaintiff complains took place in the county of York.

6.    Jurisdiction is based on federal questions. The damages in the case exceed $75,000.

7.    Plaintiff requests a jury trial.

## ALLEGATIONS

1

8.   Duplisea worked for several years for Biddeford in the Recreation Department ("Department").

9.   Duplisea is respected throughout the community, and he always performed his job with dignity and respect for others.

10.  Duplisea and his staff built programs which have benefitted hundreds of families throughout the community. Through the years, the Department enjoyed a professional work environment.

11.  However, in the past year, Keezer and Dunphe, both employed in the Department, began a romantic affair which caused disruption throughout the Department.

12.  The Keezer and Dunphe affair negatively affected the summer camp program and the Cub Care program.

13.  Accordingly, Duplisea spoke to his supervisor about the problem. The situation, however, persisted.

14.  Additionally, in late summer of 2021, management suspected Dunphe of falsifying his timesheets, and Keezer of deleting information from computer files.

15.  Both faced disciplinary action and possible termination.

16.  In a misguided effort to divert from their misdeeds, Keezer and Dunphe defamed Plaintiff by falsely accusing Duplisea of job performance issues, including a false claim of Duplisea slapping Keezer in the buttocks.

17.  Keezer and Dunphe made the false allegations in September of 2021 through separate emails to Diana DePaolo ("DePaolo") of Human Resources.

18.    In Dunphe's email, he claimed in "early this spring," while working to switch adapters in Room 12A, Duplisea "reached out with his hand to slap Alisha on the butt when she bent over, it made a noise, she screamed ouch, that hurt."

19.    In her email, Keezer disputed Dunphe's timing, claiming the alleged slapping incident took place late February or early March.

20.    Keezer and Dunphe claimed Jerry LaPierre ("LaPierre") and Billingslea witnessed the incident.

21.    Significantly, neither Keezer nor Dunphe reported the alleged incident at the time, instead waiting several months when their respective job performances came under scrutiny.

22.    On October 13th Biddeford commenced an investigation into complaints.

23.    Biddeford assigned Dylan Jewett ("Jewett") of the Public Works Department to investigate.[1] Jewett is an unqualified member of the Public Works Department to conduct the investigation.)

24.    The same day, Jewett and DePaolo interviewed Keezer and Dunphe.

25.    Both recounted the alleged slapping incident.

26.    Jewett and DePaolo then interviewed the two independent witnesses, Jerry Lapierre ("Lapierre") and Billingslea.

27.    Lapierre denied the slapping incident, labeling the claim a "false allegation".

28.    Lapierre also provided a statement recounting his interview with DePaolo and Jewett, writing,

> After being prompted by HR Director Diana DePaolo and Dylan J Public Works person, I did remember being in Room 12A repairing walkie talkies with Matt Duplisea. I did not see any wrongdoings of any type. They (Diana and Dylan) continued to prompt me are you sure you did not see Matt slap Alisha on the ass. I said no. I did not see Matt slap Alisha on the butt and if I did, I would have said

---

[1] Jewett and Dunphe were classmates at Thornton Academy.

3

that is inappropriate and needs to stop. Again, Matt and myself were repairing the walkie talkies pocket holder. Matt was holding the pocket holder, so I could mark and secure it to the wall. This area is about sqft. Here was me, Matt, Nikki, and Alisha in this room. I finished securing the walkies and left the area. On Matt and Nikki's behalf these people are very professional, and programs are very professional to others, parents, kids, staff, and co-workers. (See Ex. 1, Lapierre's statement)

29.    Jewett and DePaolo then interviewed Billingslea. Billingslea also denied witnessing the

slapping incident. Billingslea recounted that,

[Jewett] questioned me about an incident that happened with the Cub Care last year, and if anything came to mind. I stated no. He then asked about an incident where Matt slapped Alisha on the butt. I stated there was a day that there was some commotion on the other side of the office, but I was on the phone with a parent and looking at my computer helping that parent and did not see anything. He then asked me if I heard anything to which I stated I heard playful and joking commotion and it was Jerry, Matt, Alisha, and myself in the office. (See Ex. 2, Billingslea's email.)

30.    Jewett and DePaolo also interviewed Duplisea on October 15th. That morning at 7:00 am,

DePaolo notified Duplisea of the need for an interview regarding the environment in the

Recreation Department.

31.    DePaolo did not provide Duplisea notice of the assault charge.

32.    Duplisea assumed the interview concerned misconduct by Keezer and Dunphe.

33.    In the interview, Jewett questioned Duplisea regarding moral in the workplace,

timesheets, and related matters.

34.    Toward the end of the meeting, Jewett asked Duplisea if he had ever slapped Keezer on

the buttocks.

35.    Duplisea adamantly denied the allegation.

36.    Jewett claimed to have witnesses to the alleged incident.

37.     Duplisea responded the charge was ridiculous, reiterated the incident never happened, nor would he ever engage in such conduct.

38.     Jewett spent about five minutes on the alleged slapping incident before moving the conversation to staff vacation time.

39.     At the end of the interview, Duplisea still believed the investigation centered on the Department as a whole, with a probable emphasis on the behavior of Dunphe and Keezer; Jewett and DePaolo did not inform Duplisea otherwise.

40.     Jewett then prepared an Investigative Report. The Report is not credible.

41.     First, Jewett failed to include Lapierre's exculpatory interview or even reference it in his Report.

42.     Second, in the Report, Jewett misrepresented that Billingslea "confirmed that Matt did slap Alisha's butt at the Community Center."

43.     Third, in the Report, Jewett misrepresented that Duplisea stated that "if it happened it was accidental."

44.     Fourth, Jewett misrepresented that based on the testimony, including "Nikki Billingslea there is no doubt the described scenario did happen. All three stories corroborate with the same location, timing, and parties matching the initial allegation."[2]

45.     Jewett then submitted his Report to City Manager, James Bennett.

46.     On October 29th Billingslea met with Jewett, Bennett and DePaolo.

47.     Bennett noted that Jewett's Report claimed that Billingslea witnessed Duplisea slap Keezer's buttocks.

---

[2] Jewett's statement not only misrepresented Billingslea's statement, but that the three stories corroborate each other Keezer claimed the incident took place in late February/early March; Dunphe claimed the incident took place in March or April. Billingslea's stated an unspecified commotion took place in May.

48.    Billingslea immediately corrected Bennett, making clear she did not make such a

statement.

49.    Billingslea recounted the subject meeting, writing

Jim stated that according to the report Dylan took, that I stated that I saw Matt
slap Alisha on the butt. I immediately corrected him and said, "No. That is not
what I said." Jim asked for clarification. I told him that Dylan asked me on 10/15
if I saw it and I said no, just that there was some joking and playful commotion on
the other side of the office, but I was on the phone with a parent and on my
computer and did not see anything. Jim continually manipulated and changed my
words and attempted to coerce me to say something when it did not. He said
things such as "Well if you had to guess, you would say it happened right? Jim
then said he wanted to apologize to me because as my city manager he failed me,
as well as the city failed me. (See Ex. 3 Billingslea's email to Alan Casavant.)

50.    On November 2nd Biddeford held a Disciplinary Hearing for Duplisea.

51.    The Hearing, however, did not begin to meet minimum Due Process requirements.

52.    Prior to the Hearing, Biddeford provided Duplisea with Jewett's Report. Biddeford,

however, did not inform Duplisea that Billingslea and LaPierre had made clear that the

slapping incident did not occur. In other words, Biddeford withheld crucial exculpatory

evidence.

53.    At the Hearing, Biddeford introduced Jewett's Report, without any corrections.

Biddeford simply submitted the Report despite its knowledge Billingslea emphatically

refuted it.

54.    At the hearing, Biddeford also did not submit the exculpatory evidence from Billingslea

and LaPierre.

55.    On November 8th Biddeford terminated Duplisea for allegedly slapping Keezer.

56.     In the letter, Biddeford defamed Duplisea, asserting the evidence "conclusive enough to

conclude you committed the act."

57.    Biddeford claimed the supporting evidence consisted of "three individuals reported the same general details to the investigator."

58.    The assertion is false. Biddeford knew only Keezer and Dunphe supported the allegation.

59.    Biddeford also knew the two independent witnesses, Lapierre and Billingslea, made clear that the incident did not take place.

60.    Biddeford, however, chose to misrepresent the evidence. Biddeford's questionable behavior, unfortunately, did not end with Duplisea's termination.

61.    On November 10th Billingslea again met with Bennett and DePaolo. Billingslea recounted the meeting,

> This meeting was like nothing I had ever experienced. I was initially brought into Diana's office to review my letter, which stated I was facing up to 4 weeks unpaid suspension but definitely would be serving six days. I read this letter completely dumbfounded. Diana then asked if I had any questions, to which I replied I had many. We went to Jim's office to further discuss this. This entire meeting was completely unprofessional, with Jim making statements such as "You do not need to own Matt's stupidity." In the letter I received, it still states I personally witnessed Matthew do this action. I stated to him to him I did not know how to make it more clear to him, but I did not witness this take place. I asked him if he could 100% tell me this action occurred, to which he said he could not. So, I said, "So you terminated Matt based upon speculation?" To which he replied, yes. then did get upset and told him I no longer felt comfortable speaking with him without a representation or lawyer present and got up to leave the room. I reached for the doorknob as he threatened me by saying, Nikki do not leave this room, or you will face 4-week suspension." I then froze out of fear and remained standing and tried to wrap up the conversation quickly as I could. To this moment, I am completely in shock that I had stated I was no longer comfortable speaking, but then was threatened into remaining in the room.

62.    Billingslea could not continue to work in such an unethical environment. Accordingly, she went to the office of the Recreation Department Manager, Carl Walsh, and resigned. Walsh said he understood.

63.    In sum, the evidence does not begin to establish that Duplisea slapped Keezer. The evidence is summarized below:

- Dunphe and Keezer had been engaging in an affair for several months.
- The affair caused disruption in the Recreation Department.
- Duplisea and Billingslea reported the affair and disruptions to upper management and Human Resources.
- Upper management and Human Resources did not address the problem and disruptions.
- Despite the seriousness of the assault charge, Keezer and Dunphe did not report the incident when it allegedly occurred, instead waiting several months.
- At the time Dunphe made his allegation, he faced disciplinary action for falsifying his time sheets.
- At the time of her allegation. Keezer faced disciplinary action for deleting information from computer files.
- Independent witness Lapierre denied the incident took place.
- Independent witness Billingslea denied the incident took place.
- Duplisea denied the incident took place.
- Co-workers with knowledge of Duplisea's character will attest it would be entirely out of character for him to slap a female employee in the buttocks.

64.    Despite the substantial evidence to the contrary, Biddeford misrepresented, manipulated, and concealed evidence to facilitate Duplisea's termination.

65.    Biddeford's behavior violated Duplisea's constitutional rights and irreparably defamed him.


### COUNT I: PROCEDURAL DUE PROCESS VIOLATION  42 USC 1983

66.    Plaintiff incorporates by reference the above paragraphs.

67.    The Fifth and Fourteenth Amendment prohibits the states from depriving a person of life, liberty, or property without due process of law.

68.    Biddeford's conduct set forth *supra* established that Biddeford deprived Plaintiff of his property interest by illegally terminating him without procedural due process of law.

69.    Biddeford's conduct caused Plaintiff to suffer damages set forth below.


### COUNT II – SUBSTANTIVE DUE PROCESS VIOLATION 42 USC 1983

70.   Plaintiff repeats and reasserts the above allegations as if fully set forth therein.

71.   The Fifth and Fourteenth Amendment prohibits the states from depriving a person of life, liberty, or property without substantive due process of law.

72.   Biddeford's conduct set forth *supra* established that Biddeford deprived Plaintiff of his property interest by illegally terminating him without substantive due process of law.

73.   Biddeford's conduct caused Plaintiff to suffer damages set forth below.


## COUNT III. DEFAMATION.

74.   Plaintiff incorporates by reference the above paragraphs.

75.   Biddeford defamed Duplisea by claiming that he slapped Keezer on the buttocks.

76.   Biddeford knew or should have known that the defamatory statement was false.

77.   Biddeford published or allowed the defamatory statement to be published.

78.   As a result of Biddeford's conduct, Plaintiff has suffered damages as set forth below.

## COUNT IV v KEEZER - SLANDER

79.   Plaintiff incorporates by reference the above paragraphs.

80.   Keezer slandered Plaintiff by claiming that he slapped her on the buttocks.

81.   Keezer knew that the slanderous statement was false.

82.   Keezer published or allowed the slanderous statement to be published.

83.   As a result of Keezer's conduct, Plaintiff has suffered damages as set forth below.


## COUNT IV v DUNPHE – SLANDER

84.   Plaintiff incorporates by reference the above paragraphs.

85.   Dunphe slandered Plaintiff by claiming that he slapped Keezer on the buttocks.

86.    Dunphe knew that the slanderous statement was false.

87.    Dunphe published or allowed the slanderous statement to be published.

88.    As a result of Dunphi's conduct, Plaintiff has suffered damages as set forth below.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court (1) enter judgment of favor of the Plaintiff and (2) award damages sufficiently large to compensate for damages he has suffered as a result of Defendants' conduct including, but not limited to, damages for general and non-economic damages, economic damages, prejudgment and post judgment interest, lost wages, punitive damages, costs of this suit, including reasonable attorney fees and costs, and such further relief the Court may deem proper.

Dated:  October 18, 2022                          /s/ Guy D. Loranger
                                                  Guy D. Loranger, Esq. Bar No.9294
                                                  Attorney for Plaintiff

                                                  Law Office of Guy D. Loranger
                                                  1 Granny Smith Court, Suite 3
                                                  Old Orchard Beach, Maine 04064
                                                  (207) 937-3257