UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MATTHEW DUPLISEA, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )   No. 2:22-cv-00317-JAW |
| | ) |
| CITY OF BIDDEFORD et al., | ) |
| | ) |
|     Defendants | ) |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

Matthew Duplisea alleges that the City of Biddeford wrongly fired him after a coworker falsely accused him of slapping her butt. The City moves to dismiss Duplisea's claims that its investigation of the alleged slapping incident and subsequent termination of his employment violated his procedural and substantive due process rights. I recommend that the Court grant the City's motion to dismiss because Duplisea does not oppose the dismissal of his procedural due process claim and his allegations are insufficient to state a substantive due process claim. I further recommend that the Court decline to exercise jurisdiction over Duplisea's remaining claims because they all arise under state law.

**I. Background**

The following facts are drawn from Duplisea's complaint and are taken as true for the purpose of evaluating the City's motion to dismiss. *See Clukey v. Town of Camden*, 717 F.3d 52, 53 (1st Cir. 2013).

Duplisea worked for the City's Recreational Department for several years helping create various recreational programs that benefited the community.

1

*See* Complaint (ECF No. 1) ¶¶ 8, 10.  He always performed his job with dignity and respect and was well regarded throughout the community.  *See id.* ¶ 9.

The Rec. Department, which had always been a professional workplace, experienced upheaval when two of its employees, Alisha Keezer and Brian Dunphe, became romantically involved.  *See id.* ¶¶ 10-11.   Duplisea complained to his supervisor that Keezer and Dunphe's romance had negatively affected some of the Rec. Department's programs, and Keezer and Dunphe faced disciplinary action and possible termination because management suspected that Keezer had improperly deleted computer files and Dunphe had falsified his timesheets.  *See id.* ¶¶ 12-15.

In September 2021, Keezer and Dunphe—to distract from their own mounting problems—falsely reported to Diana DePaolo in the City's Human Resources Department that Duplisea had slapped Keezer on the butt.  *See id.* ¶¶ 16-17.  Dunphe recalled that the incident took place in early spring 2021, while Keezer reported that it took place in late February or early March 2021.  *See id.* ¶¶ 18-19.  Dunphe reported that "Duplisea 'reached out with his hand to slap [Keezer] on the butt when she bent over, it made a noise, she screamed ouch, that hurt.'"  *Id.* ¶ 18.  Keezer and Dunphe claimed that two other Rec. Department employees, Jerry LaPierre and Nikki Billingslea, had witnessed the slapping.  *See id.* ¶¶ 20, 44.

The City commenced an investigation in October 2021, assigning Dylan Jewett of the Public Works Department to conduct the investigation despite the fact that he was unqualified to do so.  *See id.* ¶¶ 22-23.  Notably, Jewett and Dunphe were classmates in high school.  *See id.* ¶ 23 n.1.

Jewett and DePaolo interviewed Keezer, Dunphe, LaPierre, Billingslea, and Duplisea. *See id.* ¶¶ 24, 26, 30. Keezer and Dunphe both "recounted the alleged slapping incident." *Id.* ¶ 25. LaPierre denied that the slapping incident had occurred and called it a false allegation. *See id.* ¶¶ 27-28. Billingslea reported that there was one day in May 2021 that she had heard "some commotion" from across the room when everyone was in the office together but that she had not seen anything and the commotion had sounded "playful and joking." *Id.* ¶¶ 29, 44 n.2. For his part, Duplisea was blindsided by the accusation and adamantly denied it; Jewett and DePaolo only spent about five minutes discussing it with him before switching to another subject. *See id.* ¶¶ 30-39.

When Jewett ultimately issued his investigative report to City Manager James Bennett, he failed to include LaPierre's exculpatory statement and misrepresented that (1) Billingslea had confirmed that the slapping occurred, (2) Duplisea had stated that if the slapping occurred it was accidental, and (3) Keezer's, Dunphe's, and Billingslea's stories were consistent and corroborated that the slapping had occurred. *See id.* ¶¶ 40-45. When Billingslea later met with Bennett, Jewett, and DePaolo, she reiterated that she had only heard "some joking and playful commotion on the other side of the office" and had not seen the slapping incident. *Id.* ¶ 49. Bennett pressured Billingslea to say that the slapping had occurred, but she refused. *Id.* ¶¶ 46-49.

The City held a disciplinary hearing in November 2021. *See id.* ¶ 50. The City provided Duplisea with Jewett's report in advance of the hearing, but did not inform him of the exculpatory evidence from LaPierre and Billingslea. *See id.* ¶ 52. It also

admitted the report at the hearing without any correction to include the exculpatory evidence. *See id.* ¶ 53.

Shortly after the disciplinary hearing, the City terminated Duplisea's employment on the basis that the evidence was "conclusive enough" to show that he had slapped Keezer. *Id.* ¶¶ 55-56. In terminating Duplisea's employment, the City misrepresented that "three individuals reported the same general details to the investigator" when it knew that was not true. *Id.* ¶¶ 57-60. The City also retaliated against Billingslea for refusing to say that she saw Duplisea slap Keezer, which ultimately caused her to resign. *See id.* ¶¶ 61-62.

Duplisea filed a complaint in October 2022 asserting claims of procedural due process violation (Count I), substantive due process violation (Count II), and defamation (Count III) against the City and claims of slander (Counts IV-V)[1] against Keezer and Dunphe. *See id.* ¶¶ 66-88. The City then filed the instant motion to dismiss the procedural and substantive due process claims for failing to state a claim. *See* Motion to Dismiss (MTD) (ECF No. 12).

## II. Legal Standard

When assessing the City's Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, I must accept as true all of Duplisea's well-pleaded facts and indulge all reasonable inferences in his favor. *See Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008). To survive dismissal, Duplisea's well-pleaded facts must "possess

---

[1] Duplisea's complaint mistakenly includes two claims labeled Count IV. *See* Complaint ¶¶ 79-88. I will refer to his slander claim against Keezer as Count IV and his slander claim against Dunphe as Count V.

4

enough heft to show that [he] is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (cleaned up).

### III. Discussion

#### A. Procedural Due Process Claim (Count I)

As previously mentioned, Duplisea does not oppose the dismissal of his procedural due process claim. *See* Opposition (ECF No. 20) at 1 n.1 ("[Duplisea] does not oppose dismissal on Count I."); Complaint ¶¶ 66-69. Accordingly, that claim should be dismissed without further ado.

#### B. Substantive Due Process Claim (Count II)

By contrast, Duplisea does oppose the dismissal of his substantive due process claim. *See* Opposition at 1-2. To state a substantive due process claim, Duplisea must plead sufficient facts to show that (1) he suffered a "deprivation of an established . . . property interest"[2] and (2) "that such deprivation occurred through governmental action that shocks the conscience." *Clark*, 514 F.3d at 112.

##### i. Established Property Interest

With regard to the first element[3], the City argues that Duplisea has failed to plausibly allege that he had a constitutionally protected property interest in his job. *See* MTD at 4-5, 7; *King v. Town of Hanover*, 116 F.3d 965, 969 (1st Cir. 1997) ("[A]

---

[2] Duplisea's substantive due process claim is rooted in the deprivation of a property interest. *See* Complaint ¶ 72 ("[The City] deprived [Duplisea] of his property interest by illegally terminating him without substantive due process of law."). He does not allege or argue that the City deprived him of life or liberty (the other two interests protected by due process).

[3] The First Circuit "typically" looks "first to whether the acts alleged were conscience-shocking" but has been clear that it has "not adopted a rigid two-step analysis in which one showing necessarily must precede the other." *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011). I have opted to address the protected interest prong first because that is how the parties structured their briefing.

public employee has a constitutionally protected property interest in his continued employment when he reasonably expects his employment will continue. An employee who can only be dismissed for cause has such an expectation. An at-will employee, however, has no reasonable expectation of continued employment. Whether an employment contract allows dismissal only for cause is a matter of state law." (cleaned up)).

Surprisingly, Duplisea "agrees" that he "has not alleged a plausible property interest in his employment with the City." Opposition at 1. In falling on his sword, however, "Duplisea requests that he be allowed to amend his complaint to allege that he had a protected interest of continued employment due to his status as" a "public employee who could only be dismissed for cause." *Id.* at 7. But beyond that succinct description, Duplisea does not indicate what specific facts he will plead if given the opportunity to amend, nor has he filed a separate motion to amend accompanied by a proposed amended complaint.

As the City correctly points out, *see* Reply at 1-3, Duplisea's embedded request for leave to amend is both procedurally improper and lacking in necessary detail, *Levitt v. Sonardyne, Inc.*, No. 2:12-cv-00032-JAW, 2012 WL 5350037, at *2 (D. Me. Oct. 29, 2012) ("Requests to amend should be made by separate motion and should attach the proposed amended complaint so that the Court is able to evaluate the nature of the proposed amendment and its sufficiency."). Courts take a "dim view" of tucking away a request for leave to amend in an opposition to a motion to dismiss. *Id.* at *1-2 ("If the Plaintiff thought that an amendment could cure the alleged

6

deficiencies, then when the Defendants moved to dismiss, the Plaintiff should have made a proper motion for leave to amend and spared the opposing party and the Court time and expense dealing with an obsolete pleading."); *see also Douglas v. Hirshon*, 63 F.4th 49, 58 (1st Cir. 2023) ("If plaintiffs believe that they need to supplement their complaint with additional facts to withstand a motion to dismiss, they have a readily available tool: a motion to amend the complaint under [Fed. R. Civ. P.] 15." (cleaned up)). And although this Court has occasionally held its nose and granted similar requests, it recently warned litigants not to expect that outcome in every case. *See Anderson v. Univ. of New England*, No. 2:21-cv-00169-GZS, 2022 WL 293969, at *1 & n.1 (D. Me. Feb. 1, 2022) (granting, in a case involving Duplisea's counsel, an "improper request" for leave to amend hidden away in a footnote in a plaintiff's opposition to a motion to dismiss but emphasizing that "such forbearance should not be expected as a matter of course").

Having failed to heed this warning and properly seek leave to amend his complaint to remedy his admitted failure to adequately plead a protected property interest, Duplisea's substantive due process claim is subject to dismissal without further opportunity to amend. *See Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 107 (1st Cir. 2013) (upholding the denial of a bare request for leave to amend where the request was embedded within an opposition to a motion to dismiss and noting that "litigants should not seriously expect to obtain a remedy without doing the necessary leg work first"); *cf. Emerito Estrada Rivera-Isuzu de P.R., Inc. v. Consumers Union of U.S., Inc.*, 233 F.3d 24, 30 (1st Cir. 2000) ("[The plaintiff] did

suggest in opposing the motion to dismiss that it wished to amend if specifics were required. The difficulty is that, despite its awareness that [the defendant] had called for dismissal on this ground, [the plaintiff] never amended its complaint as of right . . . nor did it formally ask the district court . . . to permit such an amendment. Under these circumstances, we cannot say that the district court committed error . . . by failing to *invite* [the plaintiff] to replead." (cleaned up)).

### ii. Government Action that Shocks the Conscience

The City argues that even if the Court were inclined to give Duplisea an opportunity to amend his complaint to plead a protected property interest in his job, his substantive due process claim fails for another reason: his allegations fail to shock the conscience. *See* MTD at 7-9; Reply at 3-5; *Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir. 2006) ("[T]he plaintiff must show *both* that the [governmental] acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest . . . .").

"There is no scientifically precise formula for determining whether" government "action is—or is not—sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteenth Amendment," but the caselaw is clear "that in order to shock the conscience, conduct must at the very least be extreme and egregious, or, put another way, truly outrageous, uncivilized, and intolerable." *Pagán*, 448 F.3d at 32 (cleaned up).

The concept is best illustrated through examples. Conscience-shocking governmental action has been found where individuals were framed by law

8

enforcement officers for a murder they did not commit, *see Limone v. Condon*, 372 F.3d 39, 43-45 (1st Cir. 2004), a suspect's stomach was forcibly pumped to extract evidence, *Rochin v. California*, 342 U.S. 165, 172 (1952), and a suspended police officer was required to undergo a penile plethysmograph as a condition of reinstatement, *Harrington v. Almy*, 977 F.2d 37, 38, 44 (1st Cir. 1992).  On the other hand, no substantive due process violation was found where police officers participated in a reckless high-speed chase that resulted in the fleeing vehicle striking a child, *Evans v. Avery*, 100 F.3d 1033, 1035, 1038 (1st Cir. 1996), a suspect killed himself after prosecutors encouraged the media to link him to a series of murders, *Souza v. Pina*, 53 F.3d 423, 424, 427 (1st Cir. 1995), a family was subjected to severe police harassment and intimidation, *Cruz-Erazo v. Rivera-Montañez*, 212 F.3d 617, 618-20, 623 (1st Cir. 2000), and state social workers failed to perform required background checks on foster parents resulting in the sexual abuse of foster children, *J.R. v. Gloria*, 593 F.3d 73, 80-81 (1st Cir. 2010).

Two patterns emerge from these contrasting examples.  First, not all reprehensible government conduct is egregious enough to shock the conscience.  *See DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005) (noting that the requisite level of arbitrariness and caprice "must be stunning" and that even bad faith violations of state law do not necessarily amount to substantive due process violations).  And second, usually only "conduct intended to injure in some way unjustifiable by any government interest"—such as "the intentional framing of

9

innocent citizens for serious crimes" or "extreme or intrusive physical contact"—will rise to the conscience-shocking level. *Id.* (cleaned up).

With these concepts in mind, I turn to the parties' arguments.

The City argues that even accepting the truth of Duplisea's allegations, he "fails to allege conduct that meets the shocks-the-conscience-standard standard" and, therefore, "fails to state a plausible substantive due process claim." MTD at 8-9. It points primarily to two cases to support its argument: *Farris v. Poore*, 841 F. Supp. 2d 436 (D. Me. 2012), and *Thomas v. Town of Salisbury*, 134 F. Supp. 3d 633 (D. Mass. 2015).

In *Farris*, a former town employee brought a substantive due process claim against the town manager who fired him. *See Farris*, 841 F. Supp. 2d at 438-39. The employee contended that the town manager "had no authority to make the termination decision and was a biased decisionmaker" because the town manager had both presided over his termination hearing and served as a witness against him. *Id.* at 438, 442. This Court dismissed the employee's claim, noting that "[s]uch allegations, even if true, [did] not shock the conscience and [were] insufficient to state a substantive due process claim." *Id.* at 442.

In *Thomas*, a municipal police officer brought a substantive due process claim relating to his termination from and subsequent reinstatement to the police force. *See Thomas*, 134 F. Supp. 3d at 637-38. The officer alleged that he was fired based on an unfair report from a biased investigator who coached people to say negative things about the officer due to jealousy and personal animus. *Id.* at 639-40. The court

10

dismissed the officer's substantive due process claim, noting that his allegations—which involved "no physically intrusive or violent behavior on the part of the defendants" and "no threats to deprive the [officer] of his freedom"—"paint[ed] a much less extreme picture than" the cases where the Supreme Court and First Circuit have found conscience-shocking conduct. *Id.* at 648. The court explained, "[The officer] has not claimed more than an allegedly unfair investigation and termination, which was eventually reversed through the prescribed appellate process. He has cited no cases, and none have been found, where such conduct, even if motivated by bad faith, supports a substantive due process violation." *Id.* at 647.

For his part, Duplisea argues that the City's "egregious, intentional, and systematic misrepresentations and fabrication of evidence to set up his termination" shock the conscience.[4] *See* Opposition at 7. He cites *Limone*—the case where law enforcement officers framed innocent individuals for murder—for the fundamental concept "that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit." *Limone*, 372 F.3d at 44-45.

I agree with the City, *see* Reply at 4-5, that *Limone* is inapposite; this case involves accusations of workplace misconduct, not criminal charges. Perhaps recognizing this disconnect, Duplisea suggests that alleged slapping could "implicate

---

[4] Duplisea suggests in the alternative that his allegations pass muster because they show that his termination was "capricious and without rational basis." Opposition at 7. But he cites no authority to support this purported alternative to the conscience-shocking test, and the First Circuit has been clear "that conscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." *DePoutot*, 424 F.3d at 118 n.4.

11

him for the crime of assault," Opposition at 7, but he does not allege that he faced any criminal liability because of the City's actions, nor does he cite any authority that equates being wrongly fired for workplace misconduct with being convicted and imprisoned on trumped-up murder charges. Certainly, Keezer and Dunphe's accusations against Duplisea were serious—and offensive if untrue—but courts have routinely found that biased or botched investigations into similar alleged misconduct do not shock the conscience. *See, e.g., Mirabella v. Town of Lexington*, No. 19-cv-12439-ADB, 2022 WL 464188, at *2-4, 12 (D. Mass. Feb. 15, 2022) (granting summary judgment against a police officer on his substantive due process claim premised on being fired after a "sham investigation" into his alleged sexual harassment and noting that the officer failed to cite "any cases where an allegedly biased proceeding rises to the level of" conscience "shocking conduct, and the cases where substantive due process violations have been found presented dramatically different factual scenarios, often involving physical harm or deprivation of liberty"); *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1063-64 1078 (S.D. Ohio 2017) (dismissing a university student's substantive due process claim and holding that his allegations regarding the university's investigation into a sexual assault allegation against him did not shock the conscience even where the student alleged that the university failed to consider exculpatory evidence and showed bias toward the alleged victim).

Even when taken in the light most favorable to him, Duplisea's allegations align much more closely with *Farris* and *Thomas* than *Limone*. Duplisea argues that

12

the allegations in *Farris* and *Thomas* "pale" in comparison to his own. Opposition at 11. But, if anything, the allegations in *Farris* were more egregious because one of the witnesses against the employee in that case also conducted the employee's termination hearing. *See Farris*, 841 F. Supp. 2d at 438, 442. That would be like if Keezer and Dunphe had presided over Duplisea's hearing in this case. And Duplisea's attempt to distinguish *Thomas* on the basis that it did not involve allegations of "intentionally fabricated" or "misrepresented evidence," Opposition at 12, is simply misguided. Not dissimilarly to Duplisea, the plaintiff in *Thomas* alleged that the person investigating his alleged misconduct coached witnesses to say negative things against him, and the court still concluded that those allegations were insufficient to state a substantive due process claim. *See Thomas*, 134 F. Supp. 3d at 640, 648.

Boiled down to essentials and stripped of heated rhetoric, Duplisea's allegations can be summarized as follows: after coworkers falsely accused him of serious workplace misconduct, the City fired him based on the report of an unqualified and biased investigator who—with the City Manager's knowledge—withheld exculpatory evidence and misreprsesented other evidence as being more inculpatory than it actually was. This alleged conduct, while objectionable, is not so egregious that it shocks the conscience. *See Farris*, 841 F. Supp. 2d at 442; *Thomas*, 134 F. Supp. 3d at 647-48; *González-Fuentes v. Molina*, 607 F.3d 864, 885 (1st Cir. 2010) ("The shock-the-conscience test is an extremely demanding one, and challenges analyzed under it rarely succeed."). This is especially so where, as alleged, the City did not conjure up the accusations against Duplisea in an effort to fire him and its

13

actions leading up to his termination, even if misguided and unfair, were taken in furtherance of its legitimate interest in protecting its employees from the type of misconduct alleged by Keezer and Dunphe. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[C]onduct intended to injure in some way *unjustifiable by any government interest* is the sort of official action most likely to rise to the conscience-shocking level." (emphasis added)); *González-Fuentes*, 607 F.3d at 885 ("[S]ubstantive due process is not a font of tort law, and limits executive action only when that action was infected or driven by something much worse—more blameworthy—than mere negligence, or lack of proper compassion, or sense of fairness . . . ." (cleaned up)).[5]

Accordingly, in addition to and separate from his admitted failure to adequately plead a protected property interest, Duplisea's substantive due process claim should be dismissed because he has failed to allege conscience-shocking conduct by the City.

---

[5] In preparing this recommended decision, I happened to come across two cases where conscience-shocking conduct was found in the context of municipal employment. *See Bliss v. Sanguinet*, No. 12-10123-RWZ, 2013 WL 3334728, at *5 (D. Mass. June 24, 2013) (holding that a police officer's allegations that "town officials unlawfully targeted him for personal and political reasons by . . . bringing unfounded charges of misconduct, conspiring . . . to concoct false allegations against him, and knowingly terminating him without just cause" were sufficiently conscience shocking to survive a motion to dismiss his substantive due process claim); *Higgins v. Town of Concord*, 246 F. Supp. 3d 502, 515-16 (D. Mass. 2017) (holding that a town employee stated a substantive due process claim where she alleged that town officials fabricated disciplinary issues and forced her to resign in retaliation for her taking leave under the Family and Medical Leave Act). These cases, however, do not carry the day for Duplisea for several reasons. First and foremost, he did not cite them. Second, I am somewhat dubious that they are consistent with Supreme Court and First Circuit caselaw, which sets a very high bar for conscience-shocking conduct—indeed, even the court in *Bliss* acknowledged that the allegations in that case just "barely" cleared the hurdle. *Bliss*, 2013 WL 3334728, at *5. And finally, they are factually distinguishable from this case because they involved more egregious conduct (i.e., conduct that was more driven by personal animus and less by a legitimate government interest) than is alleged here. *See, e.g.*, *Dobelle v. Flynn*, 12 F. Supp. 3d 274, 290-91 (D. Mass. 2014) (distinguishing *Bliss* on a similar basis).

### C. Remaining State Law Claims (Counts III-V)

Jurisdiction in this case is based on the presence of federal questions. *See* Complaint ¶ 6. If the Court accepts my recommendation to dismiss Duplisea's procedural and substantive due process claims, all that will remain are his state law defamation and slander claims against the City, Keezer, Dunphe. *See id.* ¶¶ 74-88.

Generally, "the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit will trigger the dismissal without prejudice of any supplemental state-law claims." *Lambert v. Fiorentini*, 949 F.3d 22, 29 (1st Cir. 2020) (cleaned up); *see* 28 U.S.C. § 1367(c)(3). "Federal courts may retain jurisdiction in appropriate cases but, before doing so, must consider the interests of fairness, judicial economy, convenience, and comity, the last of which is a particularly important concern in these cases." *Lambert*, 949 F.3d at 29 (cleaned up). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of the applicable law," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), especially when the remaining claims raise "substantial question[s] of state law," *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017).

Duplisea's remaining claims involve tort claims against a municipality and municipal employees that will involve substantial questions of Maine law, including issues of immunity under the Maine Tort Claims Act and the availability of certain common law defenses like conditional privilege. *See* City's Answer (ECF No. 13) at 14 (raising immunity under the Maine Tort Claims Act as a defense); Keezer and Dunphe's First Amended Answer (ECF No. 19) at 10 (raising conditional privilege as

a defense). Comity dictates that these questions are best left to the state courts in the absence of any remaining federal claim. *See Wilber*, 872 F.3d at 23 (noting that "it can be an abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of law that is better addressed by the state courts"); *Carey ex rel. Carey v. Me. Sch. Admin. Dist. No. 17*, 754 F. Supp. 906, 927 (D. Me. 1990) (holding that "extremely weighty reasons of comity" required the court to decline to retain supplemental jurisdiction over tort claims against governmental employees). And were any more needed to tip the scales, this case is still in its infancy; declining to exercise supplemental jurisdiction over the remaining claims will not waste judicial resources or result in a significant amount of duplicative work for the parties.[6]

As such, if the Court agrees with my recommendation to dismiss Duplisea's procedural and substantive due process claims, I further recommend that the Court decline to exercise supplemental jurisdiction over his remaining state law claims and dismiss them without prejudice.

### IV. Conclusion

For the foregoing reasons, I recommend that the Court **GRANT** the City's motion and **DISMISS** with prejudice Duplisea's procedural and substantive due process claims (Counts I-II). I further recommend that the Court **DECLINE** to

---

[6] I recognize that the City has filed notice of its intent to move for summary judgment on Duplisea's defamation claim (ECF No. 14), but it has not filed an actual summary judgment motion and can just as readily move for summary judgment in state court if Duplisea opts to refile there.

exercise supplemental jurisdiction over Duplisea's remaining claims (Counts III-V) and **DISMISS** them without prejudice.

## *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: June 6, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge